## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THE UNITED STATES OF AMERICA,

                Plaintiff,

    v.

PAUL ZIRIAX, in his official capacity as
Secretary of the State Election Board,

                Defendant.

Case No. 5:26-cv-361-G

## MOTION OF LEAGUE OF WOMEN VOTERS OF OKLAHOMA, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, AND LAIBA FATIMA TO INTERVENE AS DEFENDANTS

**Table of Contents**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

    A.    DOJ's Efforts to Obtain Voter Information From Oklahoma and Other States.... 3

    B.    DOJ's Plans to Use the Requested Data ............................................................ 4

    C.    Proposed Intervenors ....................................................................................... 8

ARGUMENT ........................................................................................................... 9

I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT. ....... 9

    A.    The Motion to Intervene Is Timely. ................................................................ 10

    B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation..... 11

    C.    Disposition of this Case May Impair the Interests of Proposed Intervenors. ...... 14

    D.    Secretary Ziriax's Interests Are Different from Those of Proposed
        Intervenors. .................................................................................................... 15

II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE
INTERVENTION .................................................................................................... 18

CONCLUSION ...................................................................................................... 20

## Table of Authorities

**Cases**

*American Farm Bureau Federation v. United States Environmental Protection Agency*,
    278 F.R.D. 98 (M.D. Pa. 2011) ......................................................................... 17

*Barnes v. Security Life of Denver Insurance Co.*,
    945 F.3d 1112 (10th Cir. 2019) ....................................................................... 10

*Berger v. North Carolina State Conference of the NAACP*,
    597 U.S. 179 (2022) ......................................................................................... 17

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of
    the Interior*, 100 F.3d 837 (10th Cir. 1996) .................................................... 10

*Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-2078, 2020 WL 8262029
    (M.D. Pa. Nov. 12, 2020) ............................................................................ 14, 20

*Donaldson v. United States*, 400 U.S. 517 (1971) .............................................. 11

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
    No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ...................... 17

*Kane County v. United States*,
    597 F.3d 1129 (10th Cir. 2010) ....................................................................... 18

*Kane County v. United States*,
    928 F.3d 877 (10th Cir. 2019) .............................................................. 10, 15, 16

*Kobach v. United States Election Assistance Commission*,
    No. 13-cv-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ................ 14, 16, 17

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ........................................................................... 16

*LaRoque v. Holder*,
    755 F. Supp. 2d 156 (D.D.C. 2010) ................................................................ 14

*Lower Arkansas Valley Water Conservancy District v. United States*,
    252 F.R.D. 687 (D. Colo. 2008) ...................................................................... 19

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
  619 F.3d 1223 (10th Cir. 2010) ................................................................... 10, 11

*Public Interest Legal Foundation, Inc. v. Winfrey*,
  463 F. Supp. 3d 795 (E.D. Mich. 2020) ............................................................. 14

*Republican National Committee v. Aguilar*,
  2024 WL 3409860 (D. Nev. July 12, 2024) ........................................................ 19

*San Juan County v. United States*,
  503 F.3d 1163 (10th Cir. 2007) ........................................................................ 12

*Selcuk v. Pate*,
  No. 4:24-cv-390-SHL-HCA, 2024 WL 5054961 (S.D. Iowa Nov. 3, 2024) ............... 13

*Texas v. United States*,
  798 F. 3d 1108 (D.C. Cir. 2015) ....................................................................... 14

*Tirrell v. Edelblut*,
  No. 24-cv-251, 2025 WL 1939965, (D.N.H. July 15, 2025) ................................... 19

*United States v. Albert Investment Co.*,
  585 F.3d 1386 (10th Cir. 2009) ........................................................................ 10

*Utah Association of Counties v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001) ....................................................................passim

*Western Energy Alliance v. Zinke*,
  877 F.3d 1157 (10th Cir. 2017) .................................................................... 11, 14

*WildEarth Guardians v. National Park Service,*
  604 F.3d 1192 (10th Cir. 2010) ........................................................................ 14

*WildEarth Guardians v. United States Forest Service*,
  573 F.3d 992 (10th Cir. 2009) ......................................................................... 16

## Statutes

5 U.S.C. § 552a ............................................................................................... 12

Okla. Stat. tit. 26, § 4-112(H) ............................................................................. 12

**Other Authorities**

*Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*,
　　Electronic Privacy Information Center (Feb. 2026),
　　https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-
　　fisma-compliance/ ................................................................................................... 6

December 5, 2025 Post by @AAGDhillon
　　https://x.com/AAGDhillon/status/1997003629442519114 .......................................... 6

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
　　Voter Roll*, N.Y. TIMES, Sept. 9, 2025,
　　https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html . 5

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES
　　MAG., Nov. 16, 2025,
　　https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-
　　staff-attorneys.html ................................................................................................... 5

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*,
　　STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-
　　roll-lists-with-homeland-security ............................................................................ 5, 7

Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging
　　U.S. Citizens Too*,
　　NPR, Dec. 10, 2025, https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-
　　data-us-citizens ......................................................................................................... 6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice
　　Department Requests for Voter Information*, BRENNAN CENTER FOR JUSTICE (updated
　　Mar. 18, 2026), https://perma.cc/ZWF4-H9RQ ......................................................... 3

Lisa Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are
　　Inadequate*, Brennan Center for Justice (Feb. 25, 2026), https://perma.cc/4WSD-
　　DJKU ......................................................................................................................... 6

Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a murky
　　assist from DOGE*, NPR, May 22, 2025, https://www.npr.org/2025/05/17/nx-s1-
　　5383277/trump-doj-doge-noncitizenvoting ............................................................... 6

Press Release, United States Department of Justice, *Justice Department Sues Five Additional States for Failure to Produce Voter Rolls* (Feb. 26, 2026), https://perma.cc/67UZ-KJFY ................................................................................4

*Read Bondi's Letter to Minnesota's Governor*, NEW YORK TIMES (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ..... 7, 8

Spencer Humphrey, *Records: DOJ Repeatedly Emailed Demands for Oklahoma Voter Data to Wrong Address*, Feb. 2, 2026, KFOR, https://kfor.com/news/oklahoma-legislature/records-doj-repeatedly-emailed-demands-for-oklahoma-voter-data-to-wrong-address/ ................................................................................................3

**Rules**

Fed. R. Civ. P. 24(b) ....................................................................................................18

Fed. R. Civ. P. 24(c) ..................................................................................................... 1

Movants the League of Women Voters of Oklahoma, the League of United Latin American Citizens, and Laiba Fatima (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and set forth the legal argument necessary to support their motion below. Proposed Intervenors append as Exhibit 1 to this motion a proposed motion to dismiss by way of a response to the United States' Complaint, while reserving the right to supplement their response to the Complaint within the time allowed for response by Rule 12 after intervention is granted. *See* Fed. R. Civ. P. 24(c).[1]

## INTRODUCTION

The United States seeks to force Oklahoma to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement, as part of efforts to "nationalize" elections.

Proposed Intervenors are the League of Women Voters of Oklahoma ("LWVOK"), the League of United Latin American Citizens ("LULAC"), and Laiba Fatima. LWVOK is a non-profit, non-partisan grassroots group, dedicated to empowering voters and defending democracy in Oklahoma, and the Oklahoma affiliate of the national League of Women Voters. LULAC is the nation's largest Latino civil rights organization, and advocates for the political and civil rights of Latino Americans, including through LULAC Oklahoma

---

[1] Proposed Intervenors attempted to confer with counsel for the United States of America regarding their position on this motion on March 20 and March 23, 2026, and did not receive a response. Defendant Paul Ziriax has not appeared in this action.

1

City ("LULAC OKC"), its Oklahoma City local council. Ms. Fatima is a naturalized citizen, who, because of that status, has a particular interest in the outcome of this case. The privacy and voting-rights interests of LWVOK and LULAC's Oklahoma members and of Ms. Fatima are directly at stake.

Proposed Intervenors are entitled to intervene as of right under Rule 24 because this motion is timely, because both their rights and interests are at stake, and because those rights and interests are not adequately represented by the existing Defendant, who unlike Proposed Intervenors, is a state actor, subject to broader public policy and political considerations external to the legal issues presented in this case. Their unique interests in this case, perspective, and motivation to interrogate the purpose of the United States' sweeping request for non-public Oklahoma voter data will ensure the full development of the record and aid the Court in its resolution of this case. Intervention has been granted to similar intervenor groups in materially identical lawsuits in a number of other states.[2]

---

[2] *See, e.g.*, Order, *United States v. Evans*, No. 1:25-cv-4403-RDM (D.D.C. Mar. 16, 2026); Minute Order, *United States v. Matthews*, No. 3:25-cv-3398-CRL-DJQ (C.D. Ill. Mar. 2, 2026); Order, *United States v. Albence*, No. 1:25-cv-1453-RGA, Dkt. No. 27 (D. Del. Feb. 4, 2026); Order, *United States v. DeMarinis*, No. 1:25-cv-3934, Dkt. No. 38 (D. Md. Feb. 2, 2026); Order, *United States v. Raffensperger*, No. 1:26-cv-485-ELR, Dkt. No. 14 (N.D. Ga. Jan. 30, 2026); Text Order, *United States v. Thomas*, No. 3:26-cv-21-KAD, Dkt. No. 40 (D. Conn. Jan. 29, 2026); Order, *United States v. Wis. Elections Comm.*, No. 3:25-cv-1036-JDP, Dkt. No. 53 (W.D. Wis. Jan. 22, 2026); Text Order, *United States v. Hanzas*, No. 2:25-cv-903-MKL, Dkt. No. 42 (D. Vt. Jan. 20, 2026); Text Order, *United States v. Schmidt*, No. 2:25-cv-1481-CB, Dkt. No. 105 (W.D. Pa. Jan. 16, 2026); Text Order, *United States v. Amore*, No. 1:25-cv-639-MSM-PAS (D.R.I. Jan. 6, 2026); Text Order, *United States v. Galvin*, No. 1:25-cv-13816-LTS, Dkt. No. 30 (D. Mass. Jan. 6, 2026); Order, *United States v. Simon*, No. 0:25-cv-3761-KMM-EMB, Dkt. No. 90 (D. Minn. Jan. 6, 2026); Order, *United States v. Nago*, No. 1:25-cv-522-LEK-RT, Dkt. No. 20 (D. Haw. Jan. 5, 2026); Order, *United States v. Scanlan*, No. 1:25-cv-371-AJ, Dkt. No. 23 (D.N.H. Jan. 5, 2026); Order, *United States v. Oliver*, No. 1:25-cv-1193-LF-JFR, Dkt. No. 25 (D.N.M.

Intervention as of right pursuant to Rule 24(a), or, in the alternative, permissive intervention pursuant to Rule 24(b), should be granted.

## BACKGROUND

### A.   DOJ's Efforts to Obtain Voter Information From Oklahoma and Other States

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty-eight states, making escalating demands for production of voter registration databases, with plans to gather data from all fifty states. *See Tracker of Justice Department Requests for Voter Information*, BRENNAN CTR. FOR JUST. (updated Mar. 18, 2026), https://perma.cc/ZWF4-H9RQ.

As alleged in the Complaint, on December 12, 2025, DOJ sent a letter to Defendant Paul Ziriax, Secretary of the Oklahoma State Election Board. *See* Compl. ¶ 18; Ex. 2, Letter of Brittany E. Bennett to Paul Ziriax (Dec. 12, 2025) ("December 12 Letter").[3] The letter demanded an electronic copy of Oklahoma's entire statewide voter registration list within fourteen days. Compl. ¶ 19; December 12 Letter at 1. The letter specifically requested

---

Dec. 19, 2025); Minute Order, *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, Dkt. No. 70 (C.D. Cal. Nov. 19, 2025).

[3] Although the Complaint asserts that "[o]n December 12, 2025, the Attorney General sent a letter to Secretary Ziriax," Compl. ¶ 18, it is more accurate to say that on December 12, the Attorney General attempted to send such a letter. According to public reporting, the Department of Justice directed its request to the wrong email address on December 12, December 19, and January 13. *See* Spencer Humphrey, *Records: DOJ Repeatedly Emailed Demands for Oklahoma Voter Data to Wrong Address*, Feb. 2, 2026, KFOR, https://kfor.com/news/oklahoma-legislature/records-doj-repeatedly-emailed-demands-for-oklahoma-voter-data-to-wrong-address/. Oklahoma officials received the December 12 letter for the first time on January 28, 2026. *Id.* Nevertheless, for ease of reference, this motion refers to a "December 12" letter.

private voter information, including registrants' full name, date of birth, address, driver's license number, and the last four digits of the registrant's Social Security number ("SSN4"). Compl. ¶ 21; December 12 Letter at 1.

Secretary Ziriax responded on February 4, 2026. *See* Compl. ¶ 23; Ex. 3, Letter of Paul Ziriax to Eric Neff (Feb. 4, 2026) ("February 4 Letter"). His letter stated that he lacked the legal authorization to share voters' driver's license numbers or any portion of their Social Security numbers, because Oklahoma law obligated him not to share such information. Compl. ¶ 24; February 4 Letter at 1.

On February 26, 2026, the United States responded by filing this lawsuit—one of at least thirty nearly-identical lawsuits that the DOJ has initiated against states across the county and the District of Columbia, seeking statewide voter files—attempting to compel production of sensitive Oklahoma voter data. *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Five Additional States for Failure to Produce Voter Rolls* (Feb. 26, 2026), https://perma.cc/67UZ-KJFY.

### B.   DOJ's Plans to Use the Requested Data

As detailed in the attached proposed motion to dismiss, *see* Ex. 1, according to extensive public reporting and DOJ's own statements and documents, the request for private, sensitive voter data from Oklahoma appears connected to novel efforts by the United States to construct a national voter database in order to scrutinize state voter rolls.

According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information."[4]

The DOJ is coordinating these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from the DOJ and DHS.[5] One article extensively quoted a recently-departed lawyer from the DOJ's Civil Rights Division, describing DOJ's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.[6]

As part of its efforts to use novel and unspecified forms of data analysis to scrutinize state voter data and target voters for potential disenfranchisement, the DOJ last year asked staffers from the new "Department of Government Efficiency" ("DOGE") to identify noncitizens in state voter rolls by matching voter data with data from the Social Security

---

[4] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[5] *Id.*; Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security.

[6] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

Administration.[7] DOJ officials have since claimed that "we've checked 47.5 million voter records" and found "several thousand non-citizens who are enrolled to vote in federal elections," although public reporting indicates that these efforts are producing false positives—*i.e.*, that they are flagging U.S. citizens as being non-citizens who are ineligible to vote.[8] A recent analysis by experts at the Electronic Privacy Information Center identified a host of other serious security concerns and concluded that the DOJ has violated the requirements of the Federal Information Security Modernization Act of 2014 with respect to its collection and retention of voter registration list data from states—including DOJ's plans to "archive" the data.[9]

In the December 12 Letter, the DOJ offered Secretary Ziriax a data sharing agreement. *See* December 12 Letter at 3. The DOJ has provided the draft memorandum of understanding in related litigation, and it shows how the data requested will be used. *See* Ex. 4, Mot. to Intervene, U.S. Dep't of Just., C.R. Div., Confidential Memorandum of Understanding ("MOU"). The terms of the MOU purport to vest the United States with

---

[7] *E.g.*, Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a murky assist from DOGE*, NPR, May 22, 2025, https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizenvoting.

[8] December 5, 2025 Post by @AAGDhillon https://x.com/AAGDhillon/status/1997003629442519114; *see* Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR, Dec. 10, 2025, https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens.

[9] *See Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Elec. Priv. Info. Ctr. (Feb. 2026), https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/; Lisa Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Ctr. for Just. (Feb. 25, 2026), https://perma.cc/4WSD-DJKU.

substantial new authority to identify supposedly ineligible voters on state voter rolls and then to compel states to remove these voters from the rolls, depriving them of the franchise. *See id.* at 2, 5.

DOJ's actions also indicate that it may target specific groups of voters in its use of the requested data and the MOU. In letters to other states requesting the same private voter data, DOJ also requested information about how election officials, among other things, process applications to vote by mail; identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, due to a felony conviction or lack of citizenship.[10] The Administration has also confirmed that it was sharing the requested information with the DHS, which will use the data to "scrub aliens from voter rolls."[11]

Recent events have made clear the abnormal nature of DOJ's requests for voter data. On January 24, 2026, Attorney General Pamela Bondi wrote a letter to Minnesota Governor Tim Walz, purporting to discuss DHS's "Operation Metro Surge" activities in the Twin Cities amidst ongoing violence against the civilian population there.[12] Like Oklahoma,

---

[10] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-1666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-9149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

[11] *See* Shorman, *supra* note 5.

[12] *Read Bondi's Letter to Minnesota's Governor*, N.Y. TIMES, Jan. 24, 2026, https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ("Bondi Letter").

7

Minnesota has been sued by the federal government seeking access to its unredacted voter rolls. The letter sets out three actions that the federal government wants Minnesota to take to "restore the rule of law, support ICE officers, and bring an end to the chaos," one of which is to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960."[13]

### C.    Proposed Intervenors

Proposed Intervenors are two grassroots organizations dedicated to protecting Oklahomans' political and civil rights and an individual voter who is a naturalized citizen. They seek to join this lawsuit to prevent the disclosure of voters' sensitive information and to preserve the right to vote.

LWVOK is a non-profit, non-partisan group dedicated to empowering voters and defending democracy in Oklahoma, with 369 members and local Leagues across the state. *See* Ex. 5, Declaration of Lynn Staggs ("Staggs Decl.") ¶¶ 5–6, 8. LWVOK is the Oklahoma affiliate of the League of Women Voters of the United States, which was founded in 1920 to advance the voting rights of women. *Id.* ¶ 4. LWVOK works year-round to register voters and encourage civic engagement in a variety of ways, including social media campaigns, email alerts, voter guides, collaboration with local high schools, tracking legislation, candidate forums, and presentations to elected officials. *See id.* ¶¶ 10–13. LWVOK's

---

[13] *Id.* at 2–3.

members and the population it serves are overwhelmingly registered (or prospective) Oklahoma voters. *Id.* ¶ 7.

LULAC is the nation's oldest and largest Latino civil rights organization, with over 575,000 members nationwide, and almost 2,000 members in Oklahoma. *See* Ex. 6, Declaration of Juan Proaño ("Proaño Decl."), ¶¶ 3–4, 12. LULAC's members are overwhelmingly registered to vote, and include both U.S. born and naturalized citizens. *Id.* ¶¶ 8–9. LULAC OKC is the only LULAC local council in Oklahoma and carries out LULAC's mission and activities in the Oklahoma City area. *Id.* ¶ 12. LULAC OKC regularly holds voter registration events, including at naturalization ceremonies, churches, college campuses, and farmers' and holiday markets, to help register people to vote. *Id.* ¶¶ 16-17. LULAC OKC plans to register voters in advance of the 2026 elections. *Id.* ¶ 17.

Laiba Fatima is a law student and an individual Oklahoma voter, registered to vote in Canadian County, Oklahoma. *See* Ex. 7, Declaration of Laiba Fatima ("Fatima Decl."), ¶ 2. She is a naturalized citizen and, indeed, one her primary motivations to become an American citizen was the ability to vote. *Id.* ¶ 5.

## ARGUMENT

### I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

In the Tenth Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a) upon establishing:

> (1) the application is timely;
> (2) the applicant[s] claim[ ] an interest relating to the property or transaction which is the subject of the action;

9

(3) the applicant[s'] interest may as a practical matter be impaired or impeded; and

(4) the applicant[s'] interest is [not] adequately represented by existing parties.

*United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir. 2009) (internal quotation marks and citation omitted). The Tenth Circuit has historically taken a "liberal" approach to allowing intervention, *see, e.g.*, *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (internal quotation marks and citation omitted), and "the requirements for intervention may be relaxed in cases raising significant public interests." *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) ("*Kane Cnty. II*") (citations omitted). As the Tenth Circuit has summarized, "[f]ederal courts should allow intervention where no one would be hurt and greater justice could be attained." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (cleaned up). "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *Barnes v. Sec. Life of Denv. Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted).

Intervention has been granted to similar intervenor groups of organizations and individual voters in materially identical lawsuits in more than a dozen states. *See supra*, note 2. Because here too, Proposed Intervenors easily meet Rule 24(a)'s requirements, the Court should grant their intervention as a matter of right.

### A. The Motion to Intervene Is Timely.

Timeliness is determined "in light of all of the circumstances." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (internal quotation

10

marks and citation omitted). Three non-exhaustive factors are "particularly important: (1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Id*. (cleaned up). *See also Clinton*, 255 F.3d at 1251 (considering "the relatively early stage of the litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and the motion to intervene").

This motion is indisputably timely. The United States filed this suit on February 26, 2026, and, upon receiving notice of the suit, Proposed Intervenors promptly prepared this motion. *Cf. W. Energy All. v. Zinke*, 877 F.3d 1157, 1164–65 (10th Cir. 2017) (timeliness satisfied when "conservation groups moved to intervene just over two months" after the complaint was filed, resulting in a "lack of prejudice" to plaintiff); *Clinton*, 255 F.3d at 1251 (timelines satisfied even when intervenor moved to intervene three years after the start of the litigation). This litigation is at its earliest stages: Defendant Secretary Ziriax has not yet filed an answer or a motion to dismiss (and indeed, as of the date of this motion, has not yet appeared), meaning the existing partes would not be prejudiced by intervention. *See Clinton*, 255 F.3d at 1251. In contrast, Proposed Intervenors will be substantially prejudiced absent intervention, given the serious threats that the United States' lawsuit poses to Proposed Intervenors' fundamental rights.

### B.  Proposed Intervenors Have Concrete Interests in the Underlying Litigation.

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *E.g.*, *Donaldson v. United States*, 400 U.S. 517, 531 (1971). A

protectable interest is one that "would be impeded by the disposition of th[e] action." *San Juan Cnty. v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013) (internal quotation marks and citation omitted). Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, Proposed Intervenors and their members have a right to privacy in the sensitive voter data the United States seeks. The December 12 Letter demanded that Secretary Ziriax turn over voters' full name, date of birth, residential address, and driver's license number or SSN4. December 12 Letter at 1. This type of sensitive personal information is protected from disclosure by Oklahoma law. *See* Okla. Stat. tit. 26, § 4-112(H) ("A full or partial Social Security number or driver license number in a voter registration record . . . shall not be considered a public record and shall be kept confidential by the State Election Board."). It is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly seeking to assemble with the data it seeks. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). Proposed Intervenors and their members hold these significant privacy interests. *See* Staggs Decl. ¶¶ 7, 19; Proaño Decl. ¶¶ 9, 20–22; Fatima Decl. ¶¶ 8–9.

*Second*, and based on DOJ's similar data requests to other States, the data DOJ seeks is likely to be used to challenge the voter registration of certain Oklahomans, including

12

voters with felony convictions; voters who have moved within Oklahoma or left the state and then returned to Oklahoma (but might be deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system); voters who are naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization); and voters who vote by mail. *See* Background, Section B. Proposed Intervenors (or their members) fall within those categories. *See* Proaño Decl. ¶ 8 ("LULAC's members include . . . naturalized citizens."); Fatima Decl. ¶ 8 ("[A]s a naturalized citizen, I may be subject to unfounded allegations of illegal voting, wrongfully removed from the voter rolls, or face discriminatory barriers to registration."); *cf. Selcuk v. Pate*, No. 4:24-cv-390-SHL-HCA, 2024 WL 5054961, at *8–9 (S.D. Iowa Nov. 3, 2024) (noting a state purge program, based on database-matching, which purportedly targeted alleged noncitizens that flagged 2,176 voters, of whom at least 88% were citizens eligible to vote, many of them naturalized citizens). Proposed Intervenors, especially those most likely to be targeted using the information DOJ seeks in this lawsuit, have a concrete interest in not being disenfranchised.

*Third*, LWVOK and LULAC, as organizations, have a protectable interest at stake, because their core mission will be harmed if the relief sought is granted. LWVOK engages in significant voter registration work that will become more challenging if prospective voters are afraid their sensitive information will be mishandled. *See* Staggs Decl. ¶ 20. LWVOK will have to expend significant resources to educate voters and its volunteers about potential data sharing, diverting its resources away from other organizational priorities. *Id.* ¶¶ 21–22. Similarly, LULAC would struggle to engage with the communities it serves if voters thought their sensitive data would be shared with the federal government.

13

Proaño Decl. ¶¶ 23, 29–32. Courts routinely find that nonpartisan public interest organizations should be granted intervention in election-related cases, demonstrating the significantly protectable interests such organizations have in safeguarding the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013); *LaRoque v. Holder*, 755 F. Supp. 2d 156, 162 n.3 (D.D.C. 2010), *rev'd in part on unrelated grounds*, 650 F.3d 777 (D.C. Cir. 2011). This case is no exception.

### C.   Disposition of this Case May Impair the Interests of Proposed Intervenors.

Not only does this lawsuit relate to Proposed Intervenors' interests, but those interests would be impaired or impeded if the United States succeeds in obtaining its requested remedies. This third element "presents a minimal burden," requiring movants to show only that "it is 'possible' that the interests they identify will be impaired." *W. Energy All.*, 877 F.3d at 1167 (quoting *WildEarth Guardians v. Nat'l Park Serv.,* 604 F.3d 1192, 1199 (10th Cir. 2010) and *Clinton*, 255 F.3d at 1253). "[W]here a proposed intervenor's interest will be prejudiced if it does not participate in the main action, the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene." *Clinton*, 255 F.3d at 1254 (internal citation omitted).

Here, the threat of impairment is significant. The United States seeks the irrevocable disclosure of private voter data to actors who may misuse it in any number of ways, including by mass-challenging or otherwise attacking Oklahomans' right to vote.

Finally, the Tenth Circuit has recognized that "the *stare decisis* effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2)." *Clinton*, 255 F.3d at 1254. For example, in *Clinton*, a judgment in favor of plaintiffs challenging the designation of a national monument would have "impair[ed] the intervenor[] [environmental groups'] interest in promoting their environmental protection goals by seeking presidential designation of other national monuments in the future." *Id.* LWVOK and LULAC have an active and ongoing interest in protecting the privacy of voters' sensitive personal data. Accordingly, a judgment in favor of the United States—endorsing their legal theories and granting their requested relief—would have a *stare decisis* effect that could harm their ability to oppose litigation or other future efforts that undermine voters' privacy interests.

### D.  Secretary Ziriax's Interests Are Different from Those of Proposed Intervenors.

Proposed Intervenors' burden to show that "existing parties may not adequately represent [their] interest" is "minimal, and it is enough to show that the representation may be inadequate." *Kane Cnty. II*, 928 F.3d at 892 (cleaned up). Proposed Intervenors meet this minimal burden here.

As the Tenth Circuit has emphasized, "the possibility of divergence of interest need not be great, and this showing is easily made when the representative party is the

15

government." *Id.* at 894 (cleaned up). "[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation." *Clinton*, 255 F.3d at 1255–56. "[T]he government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Id.* "This potential conflict exists even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest." *Id.*; *see also, e.g.*, *Kane Cnty. II*, 928 F.3d at 892–96 (interests of environmental group not adequately represented by United States); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996–97 (10th Cir. 2009) (interests of coal company not adequately represented by United States); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307–09 (5th Cir. 2022) (interests of political committees not adequately represented by governments defending election law); *Kobach*, 2013 WL 6511874, at *4 (voting rights organization could reasonably diverge interests from those of government defendants).

This litigation clearly fits these circumstances. As a government official, Secretary Ziriax has a generalized interest in carrying out his office's legal obligations under federal and state laws, and in minimizing burdens on governmental employees and resources. He also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors bring a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of civil rights groups whose sole commitment is ensuring access to the ballot and individual voters whose own rights are at risk. There are arguments and issues

16

that Defendant Secretary Ziriax may not raise that are critical to the individual voters or organizations like LWVOK. *See* Staggs Decl. ¶ 17. As one example, courts have found a risk that political considerations external to the legal issues presented by a case like this can motivate elections officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or of their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and Proposed Intervenors' personal and particular interest in the privacy of their own data—present a classic scenario supporting intervention. *See, e.g., Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders); *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of an elections agency).

17

Moreover, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they will be used to create an unauthorized national database as has been reported, and whether they are a prelude to mass challenges based on faulty data-matching techniques, are highly relevant and potentially dispositive here. Proposed Intervenors' unique interest in pursuing this highly relevant line of factual inquiry and argument, as good-government, pro-democracy organizations and an individual Oklahoman whose own rights are at stake, is further strong grounds to support intervention.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Should the Court decline to grant intervention as of right, the Court should nevertheless use its broad discretion to grant permissive intervention. *See Kane Cnty. v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010). Under Rule 24, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In exercising its discretion to grant permissive intervention, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The court may also consider "whether the would-be intervenor's input adds value to the existing litigation," "whether the petitioner's interests are adequately represented by the existing parties," and "the availability of an adequate remedy

18

in another action." *Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 691 (D. Colo. 2008) (internal citation omitted).

For the reasons discussed *supra*, Proposed Intervenors' motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and Proposed Intervenors' interests are not adequately represented by any of the existing parties. Moreover, Proposed Intervenors' defense goes directly to the issues already presented in this lawsuit, such as (1) whether federal law permits the United States to force Oklahoma to give it the personal information sought; (2) whether federal and state legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. Proposed Intervenors' distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it.

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Republican Nat'l Comm. v. Aguilar*, 2024 WL 3409860, at *1–3 (D. Nev. July 12, 2024) (permitting intervention by voter advocacy group as defendant in litigation seeking purge of voter rolls); *Tirrell v. Edelblut*, No. 24-cv-251, 2025 WL 1939965, at *3–4 (D.N.H. July 15, 2025) (allowing "a membership-based organization that represents cisgender athletes" to intervene as a defendant in a suit challenging state restrictions on transgender athletes); Order at 3, *Judicial Watch, Inc. v. Pennsylvania*, Case No. 20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 (granting permissive intervention in

NVRA case to voting rights groups upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (internal quotation marks, citation, and footnote omitted)); *Donald J. Trump for President, Inc.*, 2020 WL 8262029, at *1 (granting Rule 24(b) motion where voters and organizations "have an interest in the constitutionality of Pennsylvania's voting procedures, which goes to the heart of Plaintiffs' action" (internal quotation marks and citation omitted)). This Court should do the same.

## CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendants as of right, or in the alternative, via permissive intervention.

Dated: March 23, 2026

Respectfully submitted,

/s/ Megan Lambert
Megan Lambert (OK Bar No. 33216)
Travis Handler (OK Bar No. 36655)
American Civil Liberties Union of
Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 524-8511
mlambert@acluok.org
thandler@acluok.org

William Hughes*
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
whughes@aclu.org
tlee@aclu.org
slakin@aclu.org

* application for admission pro hac vice forthcoming

Norman Eisen *
Tianna Mays*
Pooja Chaudhuri*
Democracy Defenders Fund
600 Pennsylvania Avenue SE, Ste.15180
Washington, D.C. 20003
(202) 594-9958
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org

*Counsel for Intervenors League of Women Voters of Oklahoma, League of United Latin American Citizens, and Laiba Fatima*

20